IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-674 |
| | § | C.A. No. C-06-36 |
| RAMON RAMOS ALVARADO, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Ramon Ramos Alvarado's ("Ramos") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (D.E. 31),[1] which was received by the Clerk on January 25, 2006. The Court ordered the government to respond. (D.E. 33). After seeking and receiving several motions for extension of time to respond, the government filed a motion for summary judgment and alternatively, a response and motion to dismiss on May 25, 2006. (D.E. 41, 42). Ramos subsequently filed a response to the government's motion to dismiss, a motion to strike the government's response, and a motion to amend and supplement his 2255 pleading, which the Court has also considered.

For the reasons set forth herein, Ramos' motion for appointment of counsel (D.E. 30), motion for a hearing (D.E. 46), and motion to strike the government's response (D.E. 47) are DENIED. His motion to amend and supplement his 2255 pleading (D.E. 48) is GRANTED and the Court has considered the arguments raised therein. Finally, as to the substantive claims in his § 2255 motion,

---

[1] Dockets entries refer to the criminal case, C-04-cr-674.

1

all of Ramos' claims, except two, are subject to dismissal because he waived his right to file those claims. His other two claims, which fall outside the scope of his waiver, fail on their merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Ramos a Certificate of Appealability ("COA").

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

**A.    Summary of Offense[2]**

On November 8, 2004, at 11:15 p.m., a Ford Explorer Sport Trac towing a car dolly approached the Falfurrias, Texas Border Patrol Checkpoint. Ramos was the driver and sole occupant of the vehicle. As the vehicle approached the checkpoint, the agent noticed that the drug canine at the scene was alerting to it. The agent made contact with Ramos, who stated that he was a United States citizen and was coming from McAllen, Texas, and traveling to San Antonio, Texas, to pick up a car from a car lot. As the agent spoke with Ramos, the drug canine continued to alert to the vehicle. Ramos consented to a further search of his vehicle and drove to the secondary inspection area as directed.

In the secondary inspection area, the drug canine alerted to the undercarriage of the vehicle. Upon closer inspection, agents discovered an access panel which contained eight bundles of cocaine with 77% purity. The cocaine had an approximate net weight of 8 kilograms and an estimated value of $780,800.00. Ramos was arrested and provided his Miranda Rights. Agents recovered $878.00 in U.S. currency from Ramos' possession, as well as a folded dollar bill in his wallet which contained

---

[2] The offense conduct as set forth herein is derived from Paragraphs 4 through 7 of the Presentence Investigation Report ("PSR").

cocaine residue. When asked about the residue, Ramos admitted that he frequently used cocaine.

Later that date, Drug Enforcement Administration ("DEA") agents arrived at the scene and took custody of the case. Ramos informed the DEA agents that he picked up the vehicle he was driving in Reynosa, Tamaulipas, Mexico, on November 1, 2004, after having agreed to purchase the vehicle the day before. Ramos stated that, at the time of purchase, the vehicle had front-end damage, which was later repaired. Ramos explained that on approximately November 4, 2004, he received a call from a friend, who asked him to drive to San Antonio, Texas to pick up a vehicle that the friend had recently purchased at a car auction. At his rearraignment on December 28, 2004, Ramos explained that he did not purchase the vehicle, but that it was given to him. He further advised that he was aware that he was transporting cocaine.

### B.     Criminal Proceedings

On November 23, 2004, Ramos was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute approximately 8 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (D.E. 10). On December 28, 2004, Ramos pleaded guilty to Count One pursuant to a written plea agreement with the government. (D.E. 18, 19). In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that Ramos receive the maximum credit for acceptance of responsibility and a sentence at the lowest end of the applicable guideline range. (D.E. 19 at ¶ 2).

The plea agreement included a voluntary waiver of Ramos' right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the

> Sentencing Guidelines, which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 19 at ¶ 6) (emphasis in original). The agreement was signed by both Ramos and his counsel, in addition to the Assistant United States Attorney.

At Ramos' rearraignment, the Court specifically questioned Ramos under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> **THE COURT:** In your plea agreement, which I'm about to have Mr. Duke outline, you give up not just your right to a jury trial for sentencing enhancement issues, but you give up two other valuable – excuse me – two other very valuable rights that are independent of each other, such as – one is a right to appeal. You can appeal if I give you a higher sentence than the statutory maximum, which would be a life sentence, which would be certainly unlikely, or if I upwardly departed from the guidelines without a motion from the U.S. Attorney. Those are the only two times that you can appeal. These are both personal rights that belong to you, and only you can give them up.
>
> The second right that you're giving up in this plea agreement is a right to file a post-conviction remedy to set aside either your conviction and/or your sentence by challenging such matters as constitutionality, ineffective assistance of counsel or jurisdiction, among a few. But if you go forward today, you give up both these rights forever. Do you understand that, sir?
>
> **THE DEFENDANT**: Yes.

(D.E. 35, Rearraignment Transcript ("R. Tr.") at 13-14).

The Court showed Ramos a written copy of the plea agreement. Ramos testified that the agreement was his, that he understood it, and that it was the entire agreement. (R. Tr. at 16). He testified that he had signed the last page, and that the agreement had been read to him completely in

4

Spanish and he had discussed it completely with his attorney before signing it. (R. Tr. at 16-17). He further testified that there had not been any other promises or agreements made to him not contained in the plea agreement, and that no one had promised him that he would get safety valve or a motion for a reduction for substantial assistance in return for the plea. (Id.). It is clear from the foregoing that Ramos' waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR"). (D.E. 20). Based on his possession of 8 kilograms of cocaine, the PSR calculated Ramos' base offense level at 32. (PSR at ¶¶ 12). The PSR recommended that Ramos be given a three-level credit for acceptance of responsibility and that no other adjustments be made. (PSR at ¶¶ 12-21). The PSR thus calculated his total offense level to be 29, which, coupled with his criminal history category of I, resulted in a guideline term of imprisonment of 120 months, the statutory minimum. (PSR at ¶¶ 22-24, 34).

Ramos, through counsel, filed written objections to the PSR. (D.E. 23). In particular, he explained that he should be entitled to a safety valve reduction, because he "will have debriefed prior to sentencing."[3] (PSR at 12). He also objected to the failure to give a reduction for his minor role in the offense, and asked for an additional downward departure based on the defendant's family history, criminal history, his age, and his acceptance of responsibility. (Id.).   Sentencing was held on March 9, 2005. (D.E. 26).  Ramos' counsel reiterated his objections, and the Court heard

---

[3] In fact, he debriefed on the morning of the sentencing hearing.

5

testimony from Ramos regarding the safety valve request.[4] The Court did not find the information Ramos provided regarding the offense to be truthful, a conclusion also shared by the case agent to whom Ramos had debriefed earlier in the day. (See D.E. 36, Sentencing Transcript ("S. Tr.") at 13-14). Thus, the Court overruled Ramos' objection regarding the safety valve. (S. Tr. at 14, 15).[5] The government recommended the lowest end of the guidelines, 120 months, consistent with its obligations in the plea agreement, and Ramos' counsel, Richard Alamia, asked the Court to give him less than 120 months. The Court sentenced Ramos to 120 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed a $100 fine and a $100 special assessment. (S. Tr. at 16; D.E. 28). Judgment of conviction and sentence was entered March 17, 2005. (D.E. 28). Consistent with his waiver of appellate rights, Ramos did not appeal. Ramos' timely § 2255 motion was received by the Clerk on January 25, 2006. (D.E. 31).

### III. MOVANT'S ALLEGATIONS

In his motion, Ramos lists four grounds for relief. First, he argues that his counsel, Mr. Alamia, "induced and directed" Ramos "to lie and furnish an alibi in order to comply the safety valve before the government and this H. Court, in regrads [sic] to the identity and the whereabouts of the person that hired Petitioner [sic]." He appears to be claiming that his counsel induced him to make up information in order to obtain safety valve relief, even though he did not actually know any information about the offense. (D.E. 31 at 5).

Second, Ramos claims that Mr. Alamia lied to him and his family because he promised that

---

[4] The safety valve allows the court to sentence certain defendants without regard to the statutory minimum. U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f).

[5] Because Ramos did not qualify for safety valve relief, the Court could not sentence him below the statutory minimum. His other objections, therefore, were essentially rendered moot.

6

he would receive a sentence with the benefit of the safety valve and a minor role adjustment, and would actually face 46 to 57 months incarceration. As part of this claim, Ramos also alleges that his counsel was deficient for failing to schedule the safety valve until the day of the sentencing. (D.E. 31 at 6 & 6-A). In his supporting memorandum, he further avers that Mr. Alamia failed to object to the PSR's failure to give him an adjustment for his minor role in the offense.[6]

Ramos' third claim is that his counsel failed to appeal the sentence, despite a request from Ramos that he do so, and that Mr. Alamia also failed to communicate with him after the sentencing hearing. (D.E. 31 at 8).

Fourth and finally, Ramos contends that this Court abused its discretion and erred in sentencing him to 120 months. (D.E. 31 at 9). As part of this claim, he argues that he entered in a government plea agreement in which the government agreed to "place" him at level 27, with a range of 70 to 87 months. (Id.). He also contends that the Court denied him his right to appeal after sentencing him. (Id.). In his supporting memorandum, he explains that the Court imposed a sentence out of the range from 87 to 108 months, and therefore he had the right to appeal his sentence. (D.E. 31, Supp. Mem. at 6). He claims that his waiver of his right to appeal "was rendered not knowing and voluntary when the District Court specifically denied Petitioner from his right to appeal, in fact the Petitioner had then and has now the right to appeal an 'illegal sentence'... ." (D.E. 31, Supp. Mem. at 7). He claims that the appeal waiver therefore does not bar his claim here. He also claims that the Court did not explain the waiver of appeal provision at the plea colloquy.[7]

He has also included a letter to the Clerk, which has been docketed both as part of the § 2255

---

[6] This claim is flatly contradicted by the record.

[7] As set forth supra at pages 4-5, the record reflects that, in fact, the Court discussed the waiver provision with Ramos, and that Ramos indicated that he understood he was waiving his right to appeal.

motion (D.E. 31 at pp. 25-26) and as a separate "supplement" (D.E. 32). The document primarily reiterates his claims, but in it, he also asks for a copies of the full docket sheet, the "sentencing commitment sheet" and the rearraignment and sentencing transcripts. (D.E. 32 at 2). On the same date as his § 2255 motion was filed, he also filed a letter motion requesting the appointment of counsel to assist him in these § 2255 proceedings. (D.E. 30).

Several days before the government filed its response, the Clerk received a sworn declaration from Ramos' sister, Maricela Ramos. (D.E. 40).[8] She avers that she hired Mr. Alamia to defend her brother. She further states that Mr. Alamia made various statements to her regarding the likely sentence that Ramos would receive, including: (1) that he would only get a "short sentence"; (2) that he would only get "4 to 5 years maximum"; and (3) that it was possible he would get a six-year sentence. (D.E. 41 at ¶¶ 2,4). She further states that the only reason Mr. Alamia wanted Ramos to plead guilty was for him not to receive "the maximum sentence which was 10 years which turned out was what he did receive." (Id. at ¶ 3). Finally, she conclusorily states that "not only did [Mr. Alamia] lie to us, but he never fulfilled his duties as a defense attorney for Mr. Ramos." (Id. at ¶ 4).

The government filed a response in which has moved for dismissal or, in the alternative, for summary judgment against Ramos' motion.[9] The government first claims that Ramos' claims that fall outside the scope of his waiver fail on their merits, and that his waiver is therefore valid and enforceable and bars his § 2255 motion. (D.E. 41 at 4-5). In the alternative, the government contends

---

[8] The document is signed by Maricela Ramos, but indicates that it was translated from Spanish to English by "Rodrigo Rodriguez, a friend of Mr. Ramon Ramos-Alvarado, Jr." (D.E. 40 at 2). There is no indication that Rodriguez is a certified translator, and the original Spanish version of Ms. Ramos' affidavit is not presented. Nonetheless, the document is signed under penalties of perjury by Ms. Ramos. For purposes of this Order, the Court has considered the declaration and treats it as competent evidence in the case.

[9] Ramos has filed a motion to strike the government's response as untimely. (D.E. 47). The government sought and received two extensions of time to file its response. (See D.E. 37-39, 43). Accordingly, Ramos' motion to strike (D.E. 47) is DENIED.

that, even if he had not validly waived his right to file a § 2255 motion, his motion is subject to dismissal or summary judgment because the record in the case conclusively shows that he is not entitled to relief. (D.E. 41 at 11).

Since the government filed its response, Ramos has filed a combined answer to the government's response and motion for evidentiary hearing (D.E. 46). He has also filed a motion to amend and supplement his § 2255 motion. (D.E. 45). His motion to amend and supplement is GRANTED. The Court will address herein the additional argument Ramos raises in his motion to supplement, i.e., that his entire plea agreement is void because it contains a provision "asking the defendant to make the Guidelines mandatory by agreement," a provision which he says the Department of Justice has never given permission to local AUSAs to do. (D.E. 48 at 2).

For the reasons set forth herein, Ramos' claims fail.

## IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Ramos has procedurally defaulted his claims by failing to appeal. Rather, the Court concludes that he validly waived all of the claims unrelated to his plea, and thus it does not reach the merits of those claims. See infra Section IV.D.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

His claim that he received ineffective assistance of counsel when entering into the plea agreement, however, falls outside the scope of his § 2255 waiver, because it is a direct challenge to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Similarly, his claim that his plea agreement is invalid because it contains a Booker waiver unapproved by the Department of Justice also falls outside the scope of his agreement. Thus, the Court turns first to these claims.

**B.      Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not

address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Ramos argues that his attorney was deficient for informing him that he would likely receive a sentence of 4 to 5 or maybe 6 years, when he instead received a 120-month sentence.[10] When viewing the record as a whole, it is clear that Ramos cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Ramos must show that, absent his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Ramos' decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Ramos testified that he had had enough time to talk with his attorney, that

---

[10] Ramos characterizes his claim as one that his attorney misadvised him about his sentence. Looking at the record as a whole, however, it is clear that underlying nearly all of Ramos' contentions in his § 2255 motion, is the fact that he did not receive the benefit of the safety valve. Ramos was told by Mr. Alamia that if he fully and truthfully debriefed with the government, the Court would likely award him safety valve. With the benefit of the safety valve, the Court could have sentenced him within the applicable guideline range of 87 to 108 months, because it could have disregarded the statutory minimum. It was within Ramos' own control as to whether or not he truthfully debriefed. The Court found that he failed to do so. Mr. Alamia is in no way responsible for that failure.

Additionally, it is worth noting that the fact that Ramos did not debrief until the day of sentencing was not why the Court denied him the safety valve, as Ramos seems to believe. If the case agent and the Court had believed he had truthfully debriefed (and he otherwise met the requirements for safety valve relief, which it appears that he did), he would have been given that relief. It was solely his failure to provide truthful information about his offense that caused him not to receive the safety valve.

his attorney had answered all of his questions, that his attorney came to see him in jail and took his phone calls, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 8). The Court informed Ramos of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 10-13).

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Ramos the maximum punishment that he might receive. Specifically, the Court informed him that he faced a mandatory minim sentence of ten years, up to a maximum punishment of life imprisonment, and a maximum fine of $ 4 million. The Court also informed him that there was a mandatory $100 special assessment, and a minimum supervised release term of five years, with a maximum supervised release term of life. (R. Tr. at 18). Ramos testified that he understood. (Id.). Ramos further testified that no one had forced him to plead guilty, that his decision to plead guilty was entirely voluntary, and that he understood that if his sentence was more severe than he expected, he would still be bound by his plea. (R. Tr. at 17, 21-22, 30). Additionally, he testified that no one had promised him anything that was not in the plea agreement, such as leniency, or that he would get a motion for downward departure or for safety valve. (R. Tr. at 13, 16).

Ramirez told the Court that his attorney had discussed with him how the Sentencing Guidelines might apply in his case and that he understood that certain facts could increase his sentence. (R. Tr. at 19-20). The transcript also establishes that Ramos understood that only the Court could determine the sentence that he would ultimately receive and that any one else's estimate would not be binding on the Court:

> **THE COURT:** Do understand that your attorney's opinion of the guidelines is not necessarily that of mine? Mr. Ramos-Alvarado?
>
> **DEFENDANT:** Yes.

12

(R. Tr. at 20).

Ramos' sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Ramos' sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced, he knew that any estimates by his attorney were not binding on the Court, and his plea was knowing. Moreover, he testified that his decision to plead guilty was voluntary and that no one had forced or induced him to plead guilt, nor had anyone promised him leniency. The Court further notes that his counsel, Mr. Alamia, flatly denies

Notably, Ramos does not affirmatively allege that he would have insisted on proceeding to trial had he believed he would be sentenced to only four, five, or six years. Indeed, Ramos does not claim – even now – that he is not guilty of the offense. Moreover, the large and valuable amount of drugs in his sole possession provided evidence of his guilt.

In short, Ramos does not allege – and cannot show – that he would have insisted on going to trial but for counsel's performance. Thus, Ramos cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was deficient. His claim of ineffective assistance in the plea process fails.

**C.      Invalidity of Booker Waiver**

Ramos' plea agreement was entered into after the decision in Blakely v. Washington, 542 U.S. 296 (2004), but before the Supreme Court decided United States v. Booker, 543 U.S. 220, 125 S. Ct.

738 (2005).[11] Paragraph 8 of his agreement states:

> The defendant, by entering this plea, also waives any right to have facts that the law makes essential to the punishment either (1) charged in the indictment or (2) proven to a jury or (3) proved beyond a reasonable doubt. The defendant explicitly consents to be sentenced pursuant to the applicable Sentencing Guidelines. The defendant explicitly acknowledges that his plea to the charged offense authorizes the court to impose any sentence authorized by the Sentencing Guidelines, up to and including the statutory maximum under the relevant statute.

(D.E. 19 at ¶ 8).

Ramos' supplemental claim contains a photocopied excerpt from a secondary source, that states that, post-Booker, "the Department [of Justice]'s guidance encouraged prosecutors to continue to seek sentencing stipulations from defendants as to the proper application of the Guidelines, but the Department stopped short of allowing prosecutors to seek full-fledged Booker waivers, i.e., asking the defendant to make the Guidelines mandatory by agreement." (See D.E. 48 at Attachment 1, attaching portion of Marty Patrice Brown and Stevan E. Bunnell, Negotiating Justice: Prosecutorial Perspectives on Federal Plea Bargaining in the District of Columbia, 43 American Cr. L. Rev. 1063, 1088 (2006)). From this, Ramos argues that the local AUSA therefore did not have the authority to seek a full-fledged Booker waiver, i.e., asking that the defendant agree that the guidelines are mandatory. He further contends that Paragraph 8 of his agreement is just such a provision. He argues, therefore, that the entire plea agreement is invalid. (D.E. 48 at 2).

Other than the secondary source above,[12] Ramos cites to no authority for the proposition that

---

[11] For purposes of this Order, familiarity with the holdings in Booker and Blakely is assumed.

[12] Even that source does not directly support his contention, since it explains what local prosecutors were purportedly permitted to do *after* Booker. See 43 Am. Crim. L. Rev. at 1087-88. Ramos' plea agreement was negotiated and signed *prior* to Booker.

the United States Attorney for this district did not have authority to negotiate Paragraph 8 of Ramos' agreement. This Court has been unable to locate any such authority. Moreover, the Fifth Circuit has implicitly acknowledged the validity of an identical provision. See United States v. Reyes-Celestino, 443 F.3d 451 (5th Cir.), cert. denied, Salazar-Palacios v. United States, 126 S. Ct. 2309 (2006) (addressing the validity of an identically-worded provision and holding that the plea agreement was ambiguous as to whether or not the parties were agreeing to a mandatory application of the guidelines, but not invalidating the provision). Thus, there is no merit to his contention and his plea agreement is not invalid.

Because the Court concludes that Ramos' challenges to the validity of his plea agreement fail, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**D.    Waiver of § 2255 Rights**

It is clear from the rearraignment that Ramos understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 18-19). See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Ramos' statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his waiver was knowing and voluntary. Ramos' remaining claims, which challenge the Court's and his counsel's actions at sentencing, clearly fall within the scope of that waiver.

In sum, Ramos' ineffective assistance claim as to his plea is denied on the merits, as is his claim that the entire plea agreement is invalid because it contained a Booker waiver. His remaining

15

claims all fall within the scope of his waiver. Therefore, they are not properly before the Court. For these reasons, Ramos' § 2255 motion is DENIED in its entirety.

**E.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ramos has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the

16

denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Ramos is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea or his claim concerning the validity of Paragraph 8 of his agreement. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims.

**F.    Other Motions**

In light of the Court's resolution of Ramos' § 2255 motions, his motions for appointment of counsel, motion for a hearing, and  and for transcripts and other documents (D.E. 30, D.E. 32, 46) are DENIED. As noted supra at note 9, his motion to strike (D.E. 47) is likewise DENIED. His motion to amend his pleading (D.E. 48) is GRANTED.

### V.  CONCLUSION

For the above-stated reasons, Ramos' motion for appointment of counsel (D.E. 30), motion for a hearing (D.E. 46), and  motion to strike the government's response (D.E. 47) are DENIED. His motion to amend and supplement his 2255 pleading (D.E. 48) is GRANTED. The government's motion to dismiss (D.E. 42) is GRANTED and Ramos' motion under 28 U.S.C. § 2255 (D.E. 31) is DISMISSED WITH PREJUDICE. The Court also DENIES Ramos a Certificate of Appealability.

ORDERED this 5th day of October, 2006.

_____
Janis Graham Jack
United States District Judge